KRISTIN N. REYNA DEHART (SBN 211075)
kreyna@grsm.com
MATTHEW P. NUGENT (SBN: 214844)
mnugent@grsm.com
TIMOTHY A. HANNA (SBN: 310620)
thanna@grsm.com
ANGELA M. HAMPTON (SBN: 320749)
ahampton@grsm.com
Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7760
Facsimile: (619) 696-7124

Attorneys for Defendants
SAN DIEGO FAMILY HOUSING LLC, LIBERTY MILITARY HOUSING
HOLDINGS, LLC AND LINCOLN MILITARY PROPERTY MANAGEMENT
LP

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE GOETTLICH; STEVEN GOETTLICH; and S.G., Jr., a minor, by and through his guardian ad litem, LISA GOETTLICH,<br><br>Plaintiffs,<br><br>vs.<br><br>PATRICK KNELLER; ARLEEN KNELLER; SAN DIEGO FAMILY HOUSING, LLC, a California limited liability company; LINCOLN MILITARY PROPERTY MANAGEMENT, LP, a limited partnership; LIBERTY MILITARY HOUSING LLC, a limited liability company; and Does 1-50,<br><br>Defendants. | **'22CV1210 W    BLM**<br>CASE NO. 3:22-cv-_____<br><br>**NOTICE OF REMOVAL**<br><br>**[28 U.S.C. §§ 1331, 1441, 1442, 1446]** |

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442 and 1446, Defendants San Diego Family Housing LLC; Lincoln Military Property Management LP; and Liberty Military Housing Holdings, LLC, collectively referred to herein as "Defendants," hereby remove to this Court a civil lawsuit filed in the Superior Court for the County

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

of San Diego, Case Number 37-2022-00025476-CU-PO-CTL. In support of this Notice of Removal, Defendants state:

1.    On June 23, 2022, Plaintiffs Jamie Goettlich, Steven Goettlich, and S.G., Jr. a minor,[1] by and through their guardian ad litem, Lisa Goettlich ("Plaintiffs") filed their Complaint with the San Diego County Superior Court, relating to an incident at and adjacent to their military housing located at 2708 Wasp Way, San Diego, California (the "Subject Property") in The Village at NTC military housing community. On July 22, 2022, Defendants Lincoln Military Property Management LP and Liberty Military Housing Holdings, LLC were served with a copy of the Complaint, summonses, Plaintiffs' applications and order for appointment of guardian ad litem, notice of case assignment and ADR information. On July 29, 2022, Defendant San Diego Family Housing, LLC was served with a copy of the Complaint, summons, Plaintiffs' applications and order for appointment of guardian ad litem, notice of case assignment and ADR information. A copy of the above listed papers which were served on Defendants are attached to this Notice of Removal as Exhibit A.

2.    In this case, all of the acts alleged in the Complaint occurred on a federal enclave owned by the United States of America, Department of the Navy ("Navy"). Plaintiffs resided in military housing located at 2708 Wasp Way, San Diego, California which is part of The Village at NTC (Naval Training Center, San Diego) neighborhood. Declaration of K. Reyna DeHart, "DeHart Decl." at ¶3, See Ex. A to Notice of Removal, Plaintiffs' Complaint ¶17. Plaintiffs have asserted various claims grounded in tort alleging they suffered injuries and damages as a result of a dog bite by a dog belonging to their neighbors, Defendants Patrick Kneller and Arleen Kneller, who also resided in military housing at The Village at NTC. Id. at ¶¶1-78. All events upon which these claims are based occurred in The Village at NTC neighborhood and, in fact, occurred almost exclusively at and adjacent to

[1] Minor's name redacted per the Court's General Order. Minor's name has also been redacted from Exhibit A hereto.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1    Plaintiffs' home in that community.  See id. at ¶ 25 ("in the alleyway behind their
2    residence at 2708 Wasp Way at The Village NTC").

3          3.     Defendant Liberty Military Housing Holdings, LLC, joins in this
4    removal, but does not have any connection to the events alleged in the Complaint,
5    and will be seeking dismissal and/or moving to dismiss upon removal.  DeHart Decl.
6    at ¶¶4-5.

7          4.     Based on the allegations in the Complaint, Plaintiffs allege that
8    Defendant San Diego Family Housing LLC was involved in the ownership of the
9    Subject Property and Defendants Lincoln Military Property Management LP and
10    Liberty Military Housing Holdings, LLC were involved in the management of the
11    Subject Property.  Ex. A to Notice of Removal, Complaint at ¶¶15-16. The ground
12    lessor of the Subject Property is San Diego Family Housing, LLC.  DeHart Decl. at
13    ¶4.  The property manager of the Subject Property is Defendant Lincoln Military
14    Property Management LP.  DeHart Decl., ¶5. Defendants dispute the involvement
15    of Defendant Liberty Military Housing Holdings, LLC with the Subject Property or
16    the allegations of the Complaint.  DeHart Decl., ¶4.

17          5.     This action is removable to this Court on three independent bases: (1)
18    pursuant to 28 U.S.C. § 1331, because the events alleged in the Complaint occurred
19    within a federal enclave; (2) under 28 U.S.C. § 1442, because (a) Defendant San
20    Diego Family Housing, LLC, the actual ground lessor, is a federal agency; and (b)
21    at all relevant times Defendants San Diego Family Housing LLC and Lincoln
22    Military Property Management, LP were acting under a federal officer.

23          6.     Because the events alleged in the Complaint occurred on a federal
24    enclave, this Court has jurisdiction under 28 U.S.C. § 1331.  See, e.g., Akin v.
25    Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998) (finding that "[p]ersonal
26    injury actions which arise from incidents occurring in federal enclaves may be
27    removed to federal district court as a part of federal question jurisdiction."); see also
28    Federico v. Lincoln Military Housing, LLC et. al, 901 F. Supp. 2d 654 (E.D. Va.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Oct. 18, 2012) (upholding removal of nearly identical contract (residential lease) and tort claims against affiliated "Lincoln" entities that occurred on federal enclave). Authority for federal enclave jurisdiction arises from Article I, section 8, clause 17 of the United States Constitution, which provides in relevant part that "Congress shall have the power . . . to exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings." U.S. Const., Art. I § 8, cl. 17.

7.      Federal courts, including the Ninth Circuit, routinely interpret this clause to permit removal of tort claims filed in state court if the alleged tort was committed on a federal enclave.  The Ninth Circuit held, in Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006), that "Federal Courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" Id. at 1250. In Willis v. Craig, 555 F.2d 724 (9th Cir. 1977), a civilian employee of the United States Navy was injured while working at Concord Naval Weapons Station in California.  While the Ninth Circuit remanded the case back to the district court for further factual findings before ruling on jurisdiction, because of issues concerning how the government acquired the property on which the tort occurred, the Court stated that it had "no quarrel with the propriety of enclave jurisdiction in this case (if the facts support it), even though the state courts may have concurrent jurisdiction." Id. at 726 n.4.

8.      In Akin, several Air Force employees brought toxic tort claims against certain manufacturers of asbestos in state court. 156 F.3d at 1033-34.  The complaint alleged that the employees were exposed to asbestos at the Tinker Air Force Base in Oklahoma City. Id. at 1033.  The defendants removed the case to federal court based on federal enclave jurisdiction. Id. at 1034.  The Tenth Circuit upheld removal of the case, finding that "personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal

question jurisdiction." Id.; see also Stokes v. Adair, 265 F.2d 662, 665-66 (4th Cir. 1959) (finding federal district court possessed jurisdiction for personal injuries arising on a federal enclave); Mater v. Holley, 200 F.2d 123, 124-25 (5th Cir. 1952) (finding that federal courts have jurisdiction over torts committed on federal enclaves); Lawler v. Miratek Corp., 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) (finding that state law claim for defamatory statement allegedly made at Fort Bliss could be removed under federal enclave jurisdiction).

9.     A federal enclave is created where the federal government acquires land by purchase or condemnation with the consent of the state or commonwealth in which the land is located.  See Humble Pipe Line v. Waggonner, 376 U.S. 369, 371-72 (1964).  "In determining whether a claim arises on a federal enclave, courts have simply looked to see where all the 'pertinent events' took place."  Rosseter v. Industrial Light & Magic, 2009 WL 210452, at *2 (N.D. Cal. Jan 27, 2009) (citing Stiefel v. Bechtel Corp., 497 F. Supp. 2d 1138, 1148 (S.D. Cal 2007)).

10.     The property on which Plaintiffs' home is located in The Village at NTC, and other properties surrounding it in San Diego, California, was originally ceded to the United States Government from Mexico in the Treaty of Guadalupe Hidalgo of 1848. DeHart Decl., ¶6, Exhibit 1 thereto, Treaty of Guadalupe Hidalgo. Section 3 of the California Statehood Act conditioned the State of California's admission to the Union on acknowledgment of, and promise to not interfere with or impair, federal title to public lands.  DeHart Decl., ¶7, Exhibit 2 thereto, An Act for the Admission of the State of California into the Union, Thirty-First Congress, Sess. 1, 1850.

11.     By the California Statutes of 1897, chapter 56, the State of California ceded to the United States exclusive jurisdiction over all lands within the State then held, occupied or reserved by the government of the United States for military purposes or defense, or which thereafter would ceded or conveyed to the government

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   of the United States for such purposes.  Cal. Statutes, 1897, Ch. 56.  DeHart Decl.,
2   ¶8, Exhibit 3 thereto, California Statutes of 1897.

3       12.    The property in question, including the Subject Property on Wasp Way,
4   San Diego, California, is presently recorded in the County of San Diego Recorder's
5   Office as being owned by the United States of America Department of the Navy.
6   (San Diego County Assessor/Recorder Certified Copy of Property Ownership and
7   Parcel Map [encompassing address of Subject Property], Oct. 16, 2019.  DeHart
8   Decl., ¶9, Exhibit 4 thereto, San Diego County Assessor/Recorder's Office Certified
9   Copy of Property Ownership and Parcel Map.  As such, this land is unequivocally a
10  federal enclave.

11      13.    Today, the federal government (the United States, acting by and
12  through the Navy) and the State of California exercise concurrent jurisdiction over
13  The Village at NTC and the surrounding areas.  In May 1996, the United States
14  Department of the Navy requested that California accept a retrocession of the then-
15  exclusive legislative jurisdiction over 497 of the 540 acres of the Naval Training
16  Center, San Diego (including the lands comprising The Village at NTC) and
17  establish concurrent legislative jurisdiction over the property.  This was accepted on
18  May 15, 1996.  DeHart Decl., ¶10, Exhibit 5 thereto, Acceptance of Retrocession of
19  Legislative Jurisdiction.   The description of the property in the Retrocession
20  (including that from the Marine Corps Recruiting Depot, to the boundary of the
21  formal Naval Training Center, to Harbor Drive, to Nimitz Boulevard, to Rosecrans
22  Avenue and north to Lytton Street) encompasses the Village at NTC development,
23  including the Subject Property.  The Village at NTC is owned by the United States
24  of America, Department of the Navy, and leased to San Diego Family Housing,
25  LLC.  Parcel Map 20716, pages 1 and 2, San Diego County Recorder's Office, filed
26  Sept. 25, 2009.  DeHart Decl., ¶11, Exhibit 6 thereto, Parcel Map 20716.

27      14.    California's exercise of concurrent jurisdiction over the enclave,
28  however, does not negate federal enclave jurisdiction.  The Supreme Court has long

1   recognized that a state's reservation of the ability to enforce certain laws does not

2   render the Enclave Clause inapplicable. See Humble Pipe Line, 376 U.S. at 372; see

3   also Virginia v. Reno, 955 F. Supp. 571, 577 (E.D. Va. 1996) (finding that

4   "[a]lthough the Enclave Clause refers to 'exclusive' federal jurisdiction over

5   enclaves, the states can condition their consent by reserving vestiges of jurisdiction

6   over ceded areas and, as long as these reservations do not conflict with announced

7   federal purposes, joint, or dual, jurisdictional arrangements are possible."), vacated

8   as moot, 122 F.3d 1060 (4th Cir. 1997) (per curiam) (Table).  Cf. Howard v.

9   Commissioners of Sinking Fund of City of Louisville, 344 U.S. 624, 627 (1953)

10  (ruling that "[t]he fiction of a state within a state can have no validity to prevent the

11  state from exercising its power over the federal area within its boundaries, so long

12  as there is no interference with the jurisdiction asserted by the Federal

13  Government.").  The Ninth Circuit in Willis found that federal enclave jurisdiction

14  remains appropriate, if the facts support it, if there is concurrent jurisdiction.  Willis,

15  555 F.2d at 726, n.4.

16          15.    Furthermore, under the Lease Agreements for the Subject Property,

17  namely that with Plaintiffs, Plaintiffs explicitly agreed "that this Lease and the

18  contractual relationship between the parties shall be construed exclusively in

19  accordance with, and shall be exclusively governed by, federal substantive law…."

20  with only a few select California Civil Code sections which Plaintiffs agreed would

21  also apply, which further supports that the jurisdiction is concurrent.  DeHart Decl.,

22  ¶13, Ex. 7 thereto, Goettlich Lease, ¶34 (emphasis added).  See also, Ex. 8 to DeHart

23  Decl., Kneller Lease, ¶34.  This also invokes the Supremacy Clause of the United

24  States Constitution with respect to the application of federal law at the Subject

25  Property.  U.S. Const., Art. VI, Cl. 2.

26          16.    The circumstances in this case are nearly identical to those addressed

27  Federico v. Lincoln Military Housing LLC et al., 901 F. Supp. 2d 654 (E.D. Va.

28  2012).  In that case, military housing tenants filed a complaint against Lincoln

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1    Military Housing LLC, Mid-Atlantic Military Family Communities, LLC, and LPC

2    Property Management, Inc., which are affiliates of the Defendants in this case, in

3    Virginia state court.  The <u>Federico</u> complaint, similar to this case, asserted tort, as

4    well as statutory, and contract claims, alleging bodily injury and property damages

5    resulting from alleged moisture and mold conditions in their home in privatized

6    military family housing managed by the defendants.  The <u>Federico</u> defendants timely

7    removed that case to the United States District Court for the Eastern District of

8    Virginia.  The <u>Federico</u> plaintiffs moved to remand the case, asserting that the

9    Enclave Clause did not provide federal jurisdiction over the state claims.

10          17.    On September 21, 2012, the Eastern District of Virginia denied the

11    <u>Federico</u> plaintiffs' motion, finding that the requirements of federal enclave

12    jurisdiction had been satisfied.  After that removal, seven similar actions were

13    removed and consolidated with <u>Federico</u>.  The Court found that it had jurisdiction

14    over the claims under the Enclave Clause because the land on which the plaintiffs

15    resided, was under concurrent federal and state jurisdiction.  <u>Federico</u>, 901 F. Supp.

16    2d at 670-72.  The Court also held that federal jurisdiction was strengthened because

17    the "case implicate[d] substantial federal interests."  <u>Id.</u> at 673.  The Court

18    specifically found that "a review of the Complaint, the facts, the parties, and the

19    nature of the public-private venture reveal that almost everything in this case

20    implicates the United States Navy in one form or another."  <u>Id.</u>

21          18.    This case is nearly identical to <u>Federico</u>.  In both cases, the events at

22    issue arose on a federal enclave owned by the Navy under concurrent federal and

23    state jurisdiction.  In <u>Federico</u>, the defendants were Lincoln Military Housing LLC,

24    Mid-Atlantic Military Family Communities, LLC, and Lincoln Property Company

25    Property Management, Inc.  Like San Diego Family Housing, LLC here, Mid-

26    Atlantic Military Family Communities was the public-private venture ("PPV") for

27    the development and management of multi-family housing for the Navy.  Like

28    Lincoln Military Property Management LP here, Lincoln Property Company

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  Property Management was the property management company retained by the PPV
2  entity.  Federico, 901 F. Supp. 2d at 656.

3      19.    In addition, the same "substantial federal interests" found in Federico
4  are present here.  This case concerns military housing operated under the Military
5  Housing Private Initiative adopted by Congress in 1996 to improve the quality of
6  service members' housing.  10 U.S.C. §§ 2871-85.  Under the Initiative, various
7  branches of the Armed Forces have established PPVs to own, develop and manage
8  military housing.  Typically, the military leases land to a private entity selected
9  through a competitive bidding process and enters into a PPV agreement with a
10  branch of the Armed Forces to develop and manage the military housing on it.
11  Service members who reside in the housing receive a Basic Allowance for Housing
12  from the military to pay their rent.  As the Federico court found, the Navy exercises
13  significant control and involvement in the operation of the PPV and management of
14  these properties.  901 F. Supp. 2d at 673 (explaining how the Navy "plays a
15  significant role in the operation" of the PPV).

16      20.    As in the Federico case, removal of this action is proper based on this
17  Court's federal question jurisdiction under 28 U.S.C. § 1331. Defendant San Diego
18  Family Housing, LLC is a PPV. On or about August 1, 2001, the Navy and
19  Lincoln/Clark San Diego, LLC entered into an Operating Agreement ("Operating
20  Agreement") to form San Diego Family Housing, LLC.  On or about August 1, 2001,
21  the Navy and Hunt Lincoln Clark Family Communities, LLC entered into a separate
22  operating agreement to form Defendant San Diego Family Housing, LLC, a PPV,
23  which has primary responsibility for managing the military housing in their
24  jurisdictions, though important actions (including capital upgrades to the properties)
25  cannot be undertaken without the Navy's consent.  DeHart Decl., ¶ 14.

26      21.    There are other key agreements between and among the Navy and
27  certain of the Defendants.  On or about August 1, 2001, the Navy and San Diego
28  Family Housing, LLC entered a fifty-year ground lease (the "Ground Lease") for

The Village at NTC and certain other military housing communities in the San Diego area.  DeHart Decl., ¶ 15.

22.    Pursuant to the Operating Agreement, PPV San Diego Family Housing, LLC entered into a property management agreement ("Property Management Agreement") with Defendant Lincoln Military Property Management, LP, relating to The Village at NTC which encompasses the Subject Property.  Under the terms of the Property Management Agreement, Lincoln Military Property Management, LP acts as an agent of the PPV San Diego Family Housing LLC in performing certain property management functions, such as property leasing. DeHart Decl., ¶ 16.

23.    Under the terms of the Ground Lease and Operating Agreement relating to the Subject Property, the Navy retained ownership of the land on which The Village at NTC is located and conveyed ownership of the improvements located on the land to the lessee under the Ground Lease for the term of the Ground Lease. Upon termination of the Ground Lease, all improvements on the land will be abandoned in place and become the property of the Navy as the fee owner of the land. DeHart Decl., ¶ 17.

24.    The Operating Agreement and Ground Lease specify that the land and housing units on it must be used for the governmental purpose of housing military service members and their families.  The PPV and Lincoln Military Property Management, LP, as the property manager, must offer the housing units first to military service members and their families, and then to Preferred Referrals who work for the Department of Defense, before allowing any civilian to lease a housing unit.  The Complaint names as Defendants, both the PPV San Diego Family Housing LLC, and Lincoln Military Property Management, LP, the agent that performs certain property management functions for PPV San Diego Family Housing LLC pursuant to a Property Management Agreement, including for the property at issue. DeHart Decl., ¶ 18.

///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

25.     These claims belong in federal court because the federal government has a strong interest in and will be impacted by the claims in this case.  The Enclave Clause of the United States Constitution is a recognition by the Framers that there are some properties in which the federal government has particularly strong interests vis-à-vis the states.  By its terms, the Enclave Clause applies to lands acquired with the states' consent "for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings."  U.S. Const. Art. I § 8 cl. 17.  The federal government had and has strong interests in the capital and the installations that it uses to provide for the common defense.  Plaintiffs' allegations and claims concerning events on a federal enclave, raises the very interests sought to be protected by the Enclave Clause.  Federico, 901 F.Supp.2d at 673-74.

26.     The Navy has contractual obligations and proprietary and financial interests that would be affected by the claims and allegations in this case.  The case also may affect the public-private venture agreements that have been adopted by the Navy and implemented by PPVs throughout the country.  In these circumstances, the federal government undoubtedly has a substantial interest in the resolution of the claims raised in this suit.  See Federico, 901 F. Supp. 2d at 673 (finding that "[a] review of the Complaint, the facts, the parties, and the nature of the public-private venture reveal that almost everything in this case implicates the United States Navy in one form or another.").  Cf. Nicodemus v. Union Pacific Corp., 440 F.3d 1227, 1236 (10th Cir. 2006) (finding substantial federal interest in land dispute when, as here, federal government had reversionary interest in the land); McMahon v. Presidential Airways, Inc., 410 F. Supp. 2d 1189, 1201 (M.D. Fla. 2006) (finding federal question jurisdiction because case involved federal procurement contract regarding military operations in Afghanistan; "issues involving a government contract and United States military operations are implicated, and substantial contested federal issues are apparent").[2]

---

[2] "The imposition of liability on Government contractors will directly affect the terms of Government contracts:  either the contractor will decline to manufacture the

NOTICE OF REMOVAL                    3:22-cv-_____

27.     Because Plaintiffs' claims are based on alleged acts that occurred on a federal enclave and because the federal government has a substantial interest in that enclave and the claims arising on it, this Court has jurisdiction to hear this controversy pursuant to 28 U.S.C. § 1331.

28.     Removal is also appropriate under 28 U.S.C. § 1442(a)(1).  The federal officer removal statute authorizes "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" to remove a civil action commenced in state court to federal court in the district in which the case in currently pending.  28 U.S.C. § 1442(a).

29.     The federal officer removal statute authorizes "removal of an entire case, even though only one of its controversies [or defendants] might involve a federal officer or agency."  Alsup v. 3-Day Blinds, Inc., 435 F. Supp. 2d 838, 844 (S.D. Ill. 2006); see also Morgan v. Huntington Ingalls, Inc., 879 F.3d 602 (5th Cir. 2018); Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 463 (5th Cir. 2016). ("[R]emoval of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute."). The Supreme Court has emphasized that the federal officer removal statute must be liberally construed.  See Watson v. Philip Morris Cos., 551 U.S. 142, 147 (2007) ("this Court has made clear that the [federal officer removal] statute must be liberally construed") (internal quotation marks omitted).  The Ninth Circuit and District Courts in this Circuit (including this Court) have since repeatedly reiterated this sentiment.  Durham v. Lockheed Martin Corp., 445 F.3d at 1252; Fontalvo v. Sikorsky Aircraft Corp., 2013 U.S. Dist. Lexis 87149, at *6; Ballenger v. Aqco, 2007 U.S. Dist. Lexis 47042 (N.D. Cal. 2007.

///

30.     Two separate bases exist for removal under § 1442(a)(1).  The first is

design specified by the Government, or it will raise its price.  Either way, the interests of the United States will be directly affected."  Boyle v. United Technologies Corp., 487 U.S. 500, 507 (1988).

-12-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

that Defendant San Diego Family Housing, LLC is an "agency" of the United States under that provision. For purposes of the federal officer removal statute, "[t]he term 'agency' includes. . . any corporation in which the United States has a proprietary interest." 28 U.S.C. § 451. Multiple courts, including the Ninth Circuit, have recognized that corporations that are owned in part by the government qualify as agencies under that definition. See Acron Invs., Inc. v. Federal Sav. & Loan Ins. Corp., 363 F.2d 236, 240 (9th Cir. 1966); also Rauscher Pierce Refsnes, Inc. v. FDIC, 789 F.2d 313, 314 (5th Cir. 1986); Government Nat'l Mortg. Ass'n v. Terry, 608 F.2d 614, 620-21 (5th Cir.1979). Courts have also recognized that LLCs can also qualify for removal under the federal officer removal statute. See, e.g., Takacs v. American Eurocopter, LLC, 656 F.Supp.2d 640, 645 (W.D. Tex. 2009) (finding that an LLC was a "person" under section 1442(a)(1)); McGillick v. World Trade Center Properties, LLC, 2004 WL 2049260 at *2 (S.D.N.Y 2004) (same).

31. Here, the United States has a proprietary interest in the named Defendant PPV, San Diego Family Housing, LLC, at issue with the Subject Property. The Navy is one of the two members of San Diego Family Housing, LLC, the public-private venture responsible for the Subject Property and The Village at NTC community. Thus, Defendant San Diego Family Housing, LLC qualifies as an "agency" of the United States entitled to remove this case to federal court under § 1442(a)(1). See City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 389-90 (6th Cir. 2007).

32. In addition, removal is proper under 28 U.S.C. § 1442(a)(1) because both Defendants San Diego Family Housing LLC and Lincoln Military Property Management, LP are "person[s] acting under [a federal] officer." Courts generally analyze the question of whether a party is a "person acting under [a federal] officer" within the meaning of § 1442(a)(1) in four steps, asking whether the defendant: (1) is a person within the meaning of the statute; (2) acted under a federal officer; (3) has performed the actions for which they are being sued under color of federal office;

-13-

1  and (4) raises a colorable federal defense to the Plaintiffs' claims.  <u>Jefferson Cnty.</u>

2  <u>v. Acker</u>, 527 U.S. 423, 431 (1999); <u>Mesa v. California</u>, 489 U.S. 121, 125 (1989);

3  <u>see also</u> <u>Aig Eur. P'ship v. McDonnell Douglas Corp.</u>, 2003 U.S. Dist. Lexis 1770

4  (C.D. Cal. 2003).  Each of those elements is met here.

5       33.  First, San Diego Family Housing LLC and Lincoln Military Property

6  Management, LP are persons within the meaning of the statute who acted under a

7  federal officer.  Both San Diego Family Housing LLC and Lincoln Military Property

8  Management LP, undoubtedly qualify as a "person" within the meaning of 28 U.S.C.

9  § 1442(a)(1).  <u>See</u>, <u>e.g.</u>, 1 U.S.C. § 1 (providing that "the word[] 'person'" in "any

10  Act  of  Congress"  "include[s]  corporations,  companies,  associations,  firms,

11  partnerships, societies, and joint stock companies," "unless the context indicates

12  otherwise"); <u>Isaacson v. Dow Chemical Co.</u>, 517 F.3d 129, 136 (2d Cir. 2008)

13  (holding that "persons" under the statute includes corporations); <u>Fung v. Abex Corp.</u>,

14  816 F. Supp. 569, 572 (N.D. Cal. 1992) (finding that corporation that built

15  submarines under the supervision of the Navy was a person for the purposes of the

16  federal officer removal statute).

17       34.  Second, San Diego Family Housing LLC and Lincoln Military Property

18  Management, LP, acted under a federal officer.  In <u>Watson</u>, the Supreme Court

19  explained that an entity "acts under" a federal officer when it "assist[s], or help[s]

20  carry out, the duties or tasks of the federal superior."  551 U.S. at 152; <u>see also</u> <u>id.</u> at

21  151 ("the removal statute applies to private persons who lawfully assist [a] federal

22  officer in the performance of his official duty") (internal quotation marks omitted).

23  Following <u>Watson's</u> guidance, the Second Circuit held that a chemical company was

24  "acting under" a federal officer for the purposes of removal when it "contracted with

25  the Government to provide a product that the Government was using during war – a

26  product that, in the absence of Defendants, the Government would have had to

27  produce itself."  <u>Isaacson</u>, 517 F.3d at 137.  The Ninth Circuit, and this Court, have

28  similarly recognized that the acting-under requirement is met where a government

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   contractor is acting at the direction of a federal agent or officer, and that no special

2   additional requirements exist to assert this defense.  Durham, 445 F.3d at 1251;

3   Willis v. Buffalo Pumps, Inc., 2013 U.S. Dist. Lexis 46242, **8-9 (S.D. Cal. Mar.

4   29, 2013).  Likewise, the Sixth Circuit held that a government contractor acted under

5   federal officers when it performed a contract to remove allegedly hazardous mold

6   from a government building – a service that the government otherwise "'would have

7   had to perform'" itself.  Bennett v. MIS Corp., 607 F.3d 1076, 1088 (6th Cir. 2010)

8   (quoting Watson, 551 U.S. at 154).

9        35.   Just like the defendants in Isaacson, Durham, Willis v. Buffalo Pumps,

10   and Bennett, San Diego Family Housing LLC and Lincoln Military Property

11   Management LP, "act[ed] under" officers of the Navy.  Pursuant to Congressional

12   authorization, see 10 U.S.C. §§ 2872, 2874-75, the Navy formed and invested in San

13   Diego Family Housing LLC, which in turn hired Lincoln Military Property

14   Management LP to manage the Subject Property.  The Navy also leased the land at

15   issue to San Diego Family Housing, LLC, and continues to own that land which

16   comprises the Subject Property. DeHart Decl., ¶¶ 9-15; Exhs. 4-6. These actions

17   were undertaken to fulfill the governmental function of housing military service

18   members and their families.  The Navy would have had to manage and maintain the

19   Plaintiffs' home and surrounding neighborhood had it not created the PPV, San

20   Diego Family Housing, LLC, and hired Lincoln Military Property Management, LP

21   to perform these services.  As a result, as in Watson, San Diego Family Housing

22   LLC and Lincoln Military Property Management, LP, "acted under" the Navy by

23   "helping and assisting" the Navy carry out its own duties and functions.

24        36.   Third, San Diego Family Housing LLC and Lincoln Military Property

25   Management, LP performed the alleged actions for which they are being sued under

26   the color of federal office.  The "hurdle erected by" the "under color of office"

27   requirement "is quite low."  Isaacson, 517 F.3d at 137.  To satisfy that requirement,

28   "Defendants must only establish that the act that is the subject of Plaintiffs' attack

1    . . . occurred <u>while</u> Defendants were performing their official duties." <u>Id.</u> at 137-38.

2    For example, in <u>Bennett</u>, air traffic controllers brought personal injury actions in

3    state court against private mold remediation firms hired by the Federal Aviation

4    Administration ("FAA"), claiming that they had caused cross-contamination of their

5    workplace.  607 F.3d at 1082.  One of the mold remediation firms removed the

6    claims against it to federal court on the basis of the federal officer removal statute.

7    <u>Id.</u> at 1084.  The court found that the firm had worked under the color of federal

8    office because it performed the work at the direction of the FAA under its contract.

9    <u>Id.</u> at 1091.  The court also found that "even if plaintiffs were able to demonstrate

10   that the alleged cross-contamination occurred because of an act not contemplated by

11   [the mold remediation firm's] contracts with the FAA, it is sufficient for our

12   purposes that [the mold remediation firm's] execution of the FAA contracts gave

13   rise to the alleged cross-contamination." <u>Id.</u> at 1088; <u>accord</u> <u>Isaacson</u>, 517 F.3d at

14   138 ("even if Plaintiffs were to prove that the [allegedly tortious conduct] occurred

15   because of an act not specifically contemplated by the government contract, it is

16   enough that the contracts gave rise to the [conduct]").  Moreover, the court noted

17   that whether the acts were outside the scope of mold remediation firm's official

18   duties or whether it was directed by the FAA was a question that the federal court

19   should resolve rather than the state court.  <u>Bennett</u>, 607 F.3d at 1088.

20        37.    In February 2020, in <u>Latiolais v. Huntington Ingalls, Inc.</u>, the Fifth

21   Circuit en banc held that "any civil action that is connected to or associated with an

22   act under color of federal office may be removed."  2020 U.S.App. Lexis 5483, at

23   *17.  This follows the Ninth Circuit's expansive reading of this prong of the federal

24   officer removal statute in <u>Goncalves</u>, where it found that a private insurance

25   company administering a plan for a federal government office, satisfied the "low

26   bar" of the causal-connection nexus for this prong of section 1442 (a) for removal.

27   <u>Goncalves ex. rel. Goncalves v. Rady Children's Hospital San Diego</u>, 865 F.3d 1237,

28   1244-49 (9th Cir. 2017).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-16-

38.   In this case, if the acts alleged in the Complaint are true, the alleged bodily injuries and damages arose from and/or are connected to San Diego Family Housing LLC and Lincoln Military Property Management, LP's performance of its duties to the Navy under the Operating Agreement and Property Management Agreement with respect to The Village at NTC military housing community. Because all of the conduct alleged in the Complaint "occurred <u>while</u> [San Diego Family Housing LLC and Lincoln Military Property Management, LP] were performing their official duties" pursuant to agreements with the Navy, <u>Isaacson</u>, 517 F.3d at 137-38, the "under color of office" requirement is met here.  <u>See also</u> <u>Corley v. Long-Lewis, Inc.</u>, 688 F. Supp. 2d 1315, 1334-35 (N.D. Ala. 2010) ("All a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy.").

39.   Fourth, Lincoln Military Property Management, LP and San Diego Family Housing, LLC have two colorable federal defenses: (1) the government contractor defense; and (2) the derivative sovereign immunity defense.  As the Supreme Court has noted, for the purposes of removal under 28 U.S.C. § 1442, a defendant need not show that the defense is meritorious, but rather that it has plausible grounds for the defense.  <u>See</u> <u>Mesa v. California</u>, 489 U.S. 121, 128-29 (1989); <u>see also</u> <u>Ellis v. Pneumo Abex Corp.</u>, 798 F. Supp. 2d 985, 990 (C.D. Ill. 2011) (finding that it is not the court's role "to consider the merits of the defense or its probability of success" only whether the defense is "plausible"); <u>Bennett</u>, 607 F.3d at 1090-91 (same); <u>Isaacson</u>, 517 F.3d at 139 (same).

40.   Under the government contractor defense, a defendant is not liable for alleged tortious conduct if: (1) the government approved reasonably precise specifications and procedures; (2) defendants conformed to those specifications and procedures; and (3) the defendants warned the government of risks of which the government was unaware.  <u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-17-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   (1988).  The government contractor defense applies here because San Diego Family
2   Housing LLC and Lincoln Military Property Management, LP discharged their
3   duties relating to the housing and community in The Village at NTC in accordance
4   with the "reasonably precise standards" in both the Operating Agreement and the
5   Property Management Agreement.

6        41.    In addition, San Diego Family Housing LLC and Lincoln Military
7   Property Management, LP can assert a colorable federal defense based on derivative
8   sovereign immunity.  Under this defense, a contractor performing at the direction
9   and authorization of a government officer is immune from suit and/or entitled to this
10  defense based upon performance of a contract.  See Yearsley v. W.A. Ross
11  Construction Co., 309 U.S. 18 (1940) ("if this authority to carry out the project was
12  validly conferred, that is, if what was done within the constitutional power of
13  Congress, there is no liability on the part of the contractor for executing its will.").
14  To this end, in denying the plaintiffs' motion to remand, the court in Federico found
15  that the Navy had "meaningful control over the operations of [the PPV] Mid-Atlantic
16  and the management of housing communities formerly run exclusively by the Navy.
17  The agreements governing Mid-Atlantic make it clear that the Navy exercises
18  control and influence over the policies and procedures concerning military housing
19  in the enclave." Federico, 901 F. Supp. 2d at 674.  Following Yearsley, in 2016, the
20  United States Supreme Court in Campbell v. Ewald-Gomez, 136 S.Ct. 663, 673
21  (2016), recognized that federal government contractors have immunity and/or can
22  avail themselves of this defense, when they act within the law pursuant to the
23  authority "validly conferred" to them by the United States government.  Even more
24  recently, in Cunningham v. General Dynamics Information Technology Inc., the
25  Fourth Circuit upheld the dismissal of claims against a defendant government
26  contractor based on derivative immunity, where the government authorized the
27  defendant's actions and the government validly conferred that authority.  888 F.3d
28  640, 646-650 (4th Cir. 2018).

42.     This defense applies here because the acts about which Plaintiffs complain were performed by Lincoln Military Property Management, LP and San Diego Family Housing LLC in accordance with the terms of a contract(s) with the Navy.  San Diego Family Housing, LLC, the actual PPV for The Village at NTC, was formed by the Navy pursuant to congressional authorization under the Military Housing Privatization Initiative, and it in turn contracted with Lincoln Military Property Management LP to carry out the management of The Village at NTC military housing and community.  If the Navy had performed the acts alleged in the Complaint directly, it would be immune from suit.  See, e.g., Mangold v. Analytic Servs., 77 F.3d 1442, 1448 (4th Cir.1996) (noting that contractors acting on behalf of federal officials "exercising discretion while acting within the scope of their employment" have "absolute immunity from state law tort liability" because imposing state tort liability would "impair the willingness of contractors to bid on government contracts and hamper the government's ability to operate efficiently") (citing Barr v. Matteo, 360 U.S. 564, 569-73 (1959)); Myers v. United States, 323 F.2d 580, 583 (9th Cir. 1963) ("To the extent that the work performed by [the defendant] was done under its contract with the Bureau of Public Lands, and in conformity with the terms of said contract, no liability can be imposed upon it for any damages claimed to have been suffered by the appellants."); TWI v. CACI Int'l, Inc., 2007 WL 3376661, at *3 (E.D. Va. Nov. 9, 2007) (finding defendant that secured and facilitated solicitations on behalf of the government was "immune from state tort liability for discretionary actions performed within the scope of employment"); Green v. ICI Am., Inc., 362 F. Supp. 1263, 1266 (E.D. Tenn. 1973) (defendant that contracted with the federal government to operate an ammunition plant was allowed to share sovereign immunity of the United States because plant was owned by the federal government and the products produced at it were intended for government use).

43.     These Defendants have timely removed this action because they filed

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-19-

this Notice of Removal within thirty days of being served the Complaint. 28 U.S.C. § 1446(b)(1). These Defendants (San Diego Family Housing LLC, Lincoln Military Property Management LP and Liberty Military Housing Holdings LLC) all join in and consent to this removal. Defendants San Diego Family Housing LLC, Lincoln Military Property Management LP and Liberty Military Housing Holdings LLC asked for consent to remove this case from Defendants Patrick and Arlene Kneller, which was not responded to; however, because San Diego Family Housing LLC and Lincoln Military Property Management LP remove this case not only based on federal enclave jurisdiction but also based on the federal officer removal statute, consent is not required. Federal officer removal does not require the consent of other defendants. See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006) ("Whereas all defendants must consent to removal under section 1441 … a federal officer or agency defendant can unilaterally remove a case under section 1442") (citations omitted); Humphries v. Elliott Co., 760 F.3d 414, 417 (5th Cir. 2014) ("Removal under § 1442(a) . . . does not require the consent of co-defendants.") (citation omitted); Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp., No. 13–cv–0331–GPC–KSC, 2013 WL 3197071, *2 (S.D. Cal. Jun. 20, 2013) ("Generally, there is a strong presumption against removal jurisdiction and the defendants always have the burden of establishing that removal is proper. However, the federal officer removal statute is an exception to this general rule and § 1442 is interpreted broadly in favor of removal. For example . . . where all defendants must consent to removal under § 1441, a federal officer or agency defendant can unilaterally remove a case under § 1442") (citations omitted). This action is not solely being removed under 28 U.S.C. §1441(a), and thus co-defendant consent is not required under 28 U.S.C. §1446(b)(2)(A).

45.   The Superior Court for the County of San Diego is located in the jurisdictional area of the United States District Court for the Southern District of California. Accordingly, this Court is the proper Court to which to remove this

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   action.

2       46.   Pursuant to 28 U.S.C. § 1446(a), Defendants are required to attach to

3   this Notice "a copy of all process, pleadings, and orders served upon" them.

4   Accordingly, Defendants attach as Exhibit A to this Notice, the Summons(es),

5   Application and Order for Appointment of Guardian ad Litem, Notice of Case

6   Assignment and ADR information, filed in San Diego County Superior Court as

7   served upon them.

8       47.   A copy of the written notice required by 28 U.S.C. § 1446(d) addressed

9   to Plaintiffs' counsel and to the Clerk of the Superior Court for the County of San

10  Diego is attached as Exhibit B to this Notice of Removal.  It will be filed with that

11  Clerk and, along with this Notice of Removal, will be served on Plaintiffs after the

12  filing of this Notice of Removal.

13      WHEREFORE, Defendants hereby remove the pending state court action to

14  the United States District Court for the Southern District of California pursuant to

15  28 U.S.C. §§1331, 1441, 1442 and 1446.

16                                  Respectfully Submitted,

17   Dated:  August 18, 2022          GORDON REES SCULLY
                                      MANSUKHANI, LLP
18

19                                  By:  /s/ Kristin N. Reyna DeHart
                                        Kristin N. Reyna DeHart
20                                      Timothy A. Hanna
                                        Angela M. Hampton
21                                      Attorneys for Defendants San Diego
                                        Family Housing LLC, Liberty Military
22                                      Housing Holdings, LLC and Lincoln
                                        Military Property Management LP
23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-21-

1

## TABLE OF CONTENTS OF EXHIBITS

| EXHIBIT | PAGE |
|:---:|:---:|
| A | 23 |
| B | 55 |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1277985/70013945v.1

NOTICE OF REMOVAL                    3:22-cv-_____